UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FILIUS, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 4:21CV01483 |
| MISSOURI DEPARTMENT OF CORRECTIONS, | ) |
|       Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Missouri Department of Corrections' motion ECF No. 5) to dismiss Plaintiff Michael Filius's complaint. Plaintiff asserts claims of retaliation in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and intentional infliction of emotional distress ("IIED"). For the reasons set forth below, the motion will be granted in part and denied in part.

**BACKGROUND**

Taken as true for the purpose of this motion, Plaintiff alleges the following facts. Plaintiff was hired by Defendant to work as a Corrections & Probation Officer beginning in January of 2018. ECF No. 4, Compl. ¶ 9. At the outset of his employment, Plaintiff notified Defendant that he would require accommodations because he suffers from an autoimmune disorder which causes him to fatigue quickly. *Id.* ¶¶ 11–12. To accommodate this health condition, Plaintiff requested that his shifts not exceed twelve hours per day, and that he not work more than four hours of overtime. *Id.* ¶¶ 13–14.

Plaintiff believed that this accommodation was granted, but he was frequently required to work shifts that exceeded the time limitations set by his accommodation. *Id.* ¶¶ 14–15.

Plaintiff used FMLA time early in his employment due to his own health care condition and also to care for his daughter, who "has a serious health condition." *Id.* ¶¶ 16–17. Plaintiff continued to take FMLA leave "intermittently" through November of 2018. *Id.* ¶ 19. In November of 2018, Plaintiff's supervisor, Cynthia Hygrade, told Plaintiff that "I don't want people taking FMLA, I don't want people with accommodations, and if you can't work over sixteen hours, I don't want you here." *Id.* ¶ 18. Hygrade made other disparaging comments about Plaintiff's need for FMLA accommodations, and on one occasion, she told Plaintiff that he would not have been hired if she knew about his need for accommodations. *Id.* ¶¶ 20, 22. Another employee of Defendant, Captain Kosanke, told Plaintiff that he was "taking advantage of" his FMLA leave. *Id.* ¶ 27.

After being subjected to harassment by his supervisors over the use of FMLA leave, Plaintiff made a formal complaint of discrimination on December 3, 2018. *Id.* ¶ 31. After making this complaint, Plaintiff was isolated from his co-workers and excluded from using the employee restroom. *Id.* ¶ 33. Instead, Plaintiff was required to use the inmate restroom, which was "in an unsanitary state" and "feces-stained." *Id.* ¶¶ 33, 35.

Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2018. *Id.* ¶ 40. Once this occurred, Plaintiff experienced additional pressure to leave his position with Defendant. *Id.* ¶¶ 41–43. An employee of Defendant told Plaintiff that "he could not keep working

2

for Defendant" because he filed a charge with the EEOC. *Id.* ¶ 41. Plaintiff was also falsely accused of misconduct with respect to the use of force on an inmate, and he was pressured to transfer to a different location. *Id.* ¶¶ 42, 44. One of Plaintiff's supervisors remarked to Plaintiff, "You're making a lot of complaints." *Id.* ¶ 47.

Plaintiff continued to take FMLA leave in 2019 for both himself and for his daughter. *Id.* ¶ 50. In late spring of 2019, Plaintiff obtained FMLA paperwork so that he could "expand his FMLA approval that he already had." *Id.* ¶ 49. Plaintiff intended to take FMLA leave "related to his serious health conditions." *Id.* ¶ 51. Plaintiff completed this paperwork and returned it to his Facility Supervisor, Don Aries, but Aries claimed that he never received the paperwork. *Id.* ¶¶ 52–53. At about the same time, Plaintiff's supervisor, Hygrade, undertook efforts to uncover negative information about Plaintiff which could be used to justify his termination. *Id.* ¶¶ 54–55. Plaintiff also alleges that, around this time, he attempted to "open[] a door to aid his breathing," due to his asthma, and he was told by an unidentified person: "If you open that door, just leave." *Id.* ¶ 58.

Plaintiff was terminated on June 17, 2019. Defendant stated that Plaintiff's termination was due to his violation of Defendant's "policies and procedures." *Id.* ¶ 59. He filed suit on December 17, 2021. He asserts claims for retaliation in violation of the FMLA (Count I), and for intentional infliction of emotional distress ("IIED") (Count II). Under Count I, Plaintiff seeks a remedy in the form of monetary damages, as well as for

"appropriate equitable, declaratory, and injunctive relief . . . ." *Id.* ¶ 69.[1] Under Count II, Plaintiff requests only monetary damages.

Defendant seeks dismissal of all counts for failure to state a claim. Defendant submits that Plaintiff cannot recover because both of his claims are barred by sovereign immunity. With respect to the FMLA claim, Defendant argues that Plaintiff relies on the "self-care" provision of the statute, which does not create a valid waiver of sovereign immunity. On the IIED claim, Defendant argues that Plaintiff's claim is barred by sovereign immunity because it does not come within the statutory exceptions.

Plaintiff opposes the motion to dismiss and argues that his claims are not barred by sovereign immunity. On the FMLA claim, Plaintiff argues that his claim also concerns leave which he took to care for his daughter. Plaintiff contends that this transforms his FMLA claim into one concerning the "family care" provision, which does yield a valid waiver of state sovereign immunity. On the IIED claim, Plaintiff argues that his claim comes within the statutory exception to sovereign immunity for an unsafe condition on public property, or that sovereign immunity has been waived by the purchase of liability insurance.

---

[1] The FMLA permits a private cause of action for money damages, and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1); *see also McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1001 n.2 (8th Cir. 2005).

## DISCUSSION

### Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir.2014). The court "construe[s] [a] complaint liberally." *Id.* (alterations in original). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017). Where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### Sovereign Immunity

Because a valid invocation of sovereign immunity would be dispositive as to all of Plaintiff's claims, the Court will address the sovereign immunity issue before considering Plaintiff's claims on the merits. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). "Under Mo. Rev. Stat. § 537.600, public entities enjoy sovereign immunity . . . unless immunity is waived, abrogated, or modified by statute." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 136 (Mo. Ct. App. 2009). Here, the parties agree

5

that Defendant is a public entity that is presumptively covered by the state's sovereign immunity. *See* Compl. ¶ 2; ECF. No. 6, Def.'s Mem. in Supp. at 2.

Determining whether sovereign immunity has been abrogated in this case requires an examination of the FMLA provisions at issue. "The FMLA entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The statutory requirements at issue here are the "family-care" and "self-care" provisions. Under the "family-care" provisions of FMLA, qualified employees are entitled to leave "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition," among other reasons. 29 U.S.C. § 2612(a)(1)(C); *see also id.* § 2612(a)(1)(A)–(B). The "self-care" provision entitles a qualified employee to leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

The FMLA entitles employees to the same period of leave regardless of which statutory requirement they satisfy, so the reason for which the leave is taken is generally not relevant to an employee's claim under the FMLA. *See* 29 U.S.C.A. § 2612(a)(1). However, the purpose of the leave is relevant to whether state sovereign immunity may be validly abrogated by the FMLA. In *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the United States Supreme Court held that Congress could validly abrogate state sovereign immunity with respect to claims against states under the family care provision of the FMLA, § 2612(a)(1)(C). *See Hibbs*, 538 U.S. at 740. The plaintiff

6

in *Hibbs* was fired while on approved FMLA leave to care for his injured wife, and he sued his employer for "retaliating against him when he opposed [their unlawful practices under the FMLA]." Brief for Resp't at 9, *Hibbs*, 538 U.S. 721 (No. 01-1368), 2002 WL 31655020. The Court in *Hibbs* noted that the administration of family-care leave at the state level resulted in significant gender discrimination, and Congress' remedy to waive sovereign immunity with respect to these claims was therefore "congruent and proportional to its remedial object." *Hibbs*, 538 U.S. at 740.

However, with respect to claims under the self-care provision of the FMLA, § 2612(a)(1)(D), the Supreme Court has reached the opposite result. *See Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 37 (2012) (plurality opinion). In *Coleman*, a plurality of the Court held that the self-care provision was not congruent or proportional to the stated objective of preventing gender discrimination, so Congress could not abrogate sovereign immunity for claims against states under the self-care provision of the FMLA. *Id.* at 39. The Eighth Circuit has similarly held that the FMLA's self-care provisions do not abrogate sovereign immunity. *See Townsel v. Missouri*, 233 F.3d 1094, 1096 (8th Cir. 2000), *overruled in part on other grounds by Hibbs*, 538 U.S. at 740; *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007). Accordingly, where the defendant in an FMLA suit is a state or state entity, plaintiffs can recover under the family-care provision but not under the self-care provision.

Here, Plaintiff does not contest that *Coleman* bars his FMLA claim to the extent that it relies on the rights created by the self-care provision under § 2612(a)(1)(D). Therefore, the Court will grant Defendant's motion in part and will dismiss Count I in

7

part, without prejudice, to the extent that Count seeks relief for violation of rights created by the self-care provision.² *See Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

However, Plaintiff maintains that Count I should still survive, at least in part, because the allegations in the complaint also implicate the family-care provision under § 2612(a)(1)(C). The parties agree that the family-care provision of the FMLA does effectively abrogate state sovereign immunity. Therefore, whether Plaintiff's claim in Count I can overcome the motion to dismiss depends on whether the complaint successfully states a claim for a violation of a right created by the family-care provision.

**FMLA Claims**

The Eighth Circuit has recognized three types of claims which may arise under the "Prohibited acts" section of the FMLA, 29 U.S.C. § 2615. "The first type, arising under § 2615(a)(1), occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski*, 691 F.3d at 1005. This type of claim has been described as an "entitlement" claim. *Id.* The second type of

---

² That Plaintiff seeks equitable and injunctive relief does not overcome the barrier posed by sovereign immunity with respect to the self-care claims. "[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002); *see also Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) ("Because— except for statutory and common-law exceptions—sovereign immunity bars *all* suits against the State, it bars suits for prospective equitable relief.") (emphasis in original).

claim exists where an employer takes adverse action against an employee who "opposes any practice made unlawful under the FMLA . . . ." *Id.* at 1006. *Pulczinski* refers to this type of claim as a "retaliation" claim. *See id.* The third type of claim arises "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Id.* This type of claim is described as a "discrimination" claim. *Id.* Although Plaintiff labels his FMLA claim as one for "retaliation," the Court must evaluate the content of the complaint to determine what type of claim has actually been alleged. *See Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013) (disregarding plaintiff's labeling of the FMLA claims and considering the content of each claim under the categorization from *Pulczinski*).

Plaintiff does not purport to raise an entitlement claim under the FMLA, and the facts alleged in the complaint could not plausibly support one with respect to the family-care provision. An entitlement claim requires that the employer take some action to avoid their responsibilities under the FMLA. *See Pulczinski*, 691 F.3d at 1005. To state an entitlement claim under the FMLA, the plaintiff must show that the employer's actions actually deterred the employee from taking leave. *See id.* at 1007; *see also Quinn v. St. Louis Cty.*, 653 F.3d 745, 753 (8th Cir. 2011) ("[T]he employee must also show that the employer denied the employee entitlements under the FMLA."). In this case, Plaintiff has not been prevented from taking leave for family-care purposes, and the facts alleged in the complaint indicate that Plaintiff did take FMLA leave for this purpose on several occasions. *See* Compl. ¶¶ 16–17, 19, 50. Plaintiff does not allege that he has been

9

denied an entitlement under the FMLA's family-care provision, so an entitlement claim is improper.[3]

Plaintiff styles his FMLA claim as one for "retaliation."  Under *Pulczinski*, that type of claim arises where an employer takes adverse action against an employee who "opposes any practice made unlawful under the FMLA . . . ."  *Pulczinski*, 691 F.3d at 1006.  Therefore, to state a valid retaliation claim, the employer must engage in some practice that is believed to be unlawful under the FMLA,[4] the employee must oppose that practice, and the employee must suffer an adverse employment action which is causally connected to their opposition.  *Id.*  A retaliation claim also requires proof of the employer's discriminatory intent.  *See Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013).  "This proof may come from direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework."  *Id. See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973).

---

[3] The Court notes that Plaintiff could potentially state an entitlement claim under the self-care provision.  Plaintiff alleges that he submitted paperwork to his supervisors to "formally expand his FMLA approval," but his supervisors falsely claimed that they never received this paperwork.  Compl. ¶¶ 48–53.  These allegations show that Defendant refused to authorize Plaintiff's FMLA leave, which is conduct that can give rise to an entitlement claim.  *See* 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights . . . include[s] . . . refusing to authorize FMLA leave . . . .").  However, Plaintiff's complaint makes clear that this request for FMLA leave was "related to *his* serious health conditions," and thus the underlying right is the self-care provision.  Compl. ¶ 51 (emphasis added).  Because the self-care provision does not abrogate state sovereign immunity, the Court need not address this potential claim.

[4] Even if the challenged practice is not a violation of the FMLA, an employee is protected from retaliation so long as the employee "reasonably believes" that practice to violate the FMLA.  29 C.F.R. § 825.220(e).

10

In this case, all three prima facie elements of a retaliation claim under *McDonnell Douglas* are adequately alleged in the complaint. First, Plaintiff alleges that his supervisors actively discouraged Plaintiff and other employees of Defendant from using FMLA leave. *See* Compl. ¶¶ 18–28. This type of conduct is expressly forbidden by the FMLA and its regulations. *See* 29 C.F.R. § 825.220(b). Further, because Defendant's vocal opposition to FMLA leave occurred around the time that Plaintiff was taking FMLA leave to care for his daughter, it is plausible that the unlawful practices in this case infringed upon the rights created by the family-care provision.[5] Second, Plaintiff openly opposed this unlawful conduct by filing both a complaint of discrimination and a charge of discrimination with the EEOC. *See* Compl. ¶¶ 31, 40. Although Plaintiff does not expressly state that the "discrimination" at issue was discrimination against employees who used or wished to use FMLA leave, that conclusion may be reasonably inferred from the other allegations in the complaint. Third, Plaintiff alleges that he suffered an adverse employment action which was causally connected to his opposition to the Defendant's unlawful policies. This conclusion is bolstered by the several factual allegations which specifically describe how Plaintiff's supervisors discouraged him from making a formal complaint and threatened him with retaliation. *See* Compl. ¶¶ 32, 39, 41, 47. These allegations are sufficient to plausibly allege a claim for FMLA retaliation.

---

[5] This theory of FMLA violation—one of retaliation against an employee who opposed an employer's unlawful practice which interfered with the rights created by the family-care provision—is analogous to the factual situation in *Hibbs*, 538 U.S. at 725.

11

For the same reasons that Plaintiff's complaint adequately states a claim for FMLA retaliation, the Court concludes that the allegations in the complaint also state a claim for "discrimination" under the terminology of *Pulczinski*. Like a retaliation claim, an FMLA discrimination claim under § 2615(a)(1) "require[s] proof of the employer's discriminatory intent," which can be proven with indirect evidence under *McDonnell Douglas*. *Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013). Under the *McDonnell Douglas* approach, to establish a prima facie case of FMLA discrimination, the plaintiff must "show that []he exercised rights afforded by the Act, that []he suffered an adverse employment action, and that there was a causal connection between h[is] exercise of rights and the adverse employment action." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). Plaintiff's complaint alleges a plausible prime facie case.

First, the facts alleged in the complaint show that Plaintiff exercised rights afforded by the FMLA. Disregarding the allegations related to the FMLA's self-care provision, the complaint alleges that Plaintiff took FMLA leave in 2018 and in 2019 to care for his daughter, who suffers from a serious health condition. Second, among other alleged adverse employment actions, Plaintiff alleges that he was terminated. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) ("Unquestionably, termination is an adverse employment action."). Third, Plaintiff has plausibly alleged a causal connection between his exercise of rights and the adverse employment action. Plaintiff alleges that shortly after beginning his job with defendant, he took FMLA leave to care for his sick daughter. Later in 2018, Plaintiff's supervisor openly expressed to him that she did not want people taking FMLA leave, and that Plaintiff would not have

12

been hired if she knew that Plaintiff would need an FMLA accommodation. Other employees of Defendant expressed the belief that Plaintiff was "taking advantage" of FMLA leave. Plaintiff was terminated somewhat shortly thereafter, on June 17, 2019. Taken together, these allegations are at least sufficient to plausibly allege a case of FMLA discrimination. *See Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106, 1113–14 (8th Cir. 2001) (finding temporal proximity between protected conduct and adverse employment action sufficient to establish prima facie case of discrimination).

Defendant contends that "[t]he bulk of Plaintiff's FMLA retaliation allegations refer to his health and need for accommodation and FMLA." ECF No. 9, Def.'s Reply Mem. at 2. The Court agrees that several allegations in the complaint exclusively refer to Plaintiff's need for accommodation with respect to his own medical condition, and would thus implicate rights under the self-care provision of the FMLA and be barred by state sovereign immunity. However, notwithstanding the self-care allegations, the complaint alleges sufficient factual matter to state a plausible claim for retaliation and discrimination against Plaintiff for exercising his rights under the family-care provision. Whether Plaintiff will be able to produce evidence of a causal link between the rights created by the family-care provision and the adverse employment action is not before the Court at this time. The Court will deny Defendant's motion to dismiss Count I to the extent that Count seeks relief for violation of rights created by the family-care provision.

**Intentional Infliction of Emotional Distress Claim**

Defendant argues that Plaintiff's IIED claim must be dismissed because it is barred by sovereign immunity. As noted above, the parties agree that Defendant is

13

protected by sovereign immunity unless the immunity is waived, abrogated, or modified by statute. Congress has not acted to abrogate state sovereign immunity with respect to claims for IIED. However, Missouri law allows for a limited waiver of sovereign immunity in four narrow circumstances. This waiver of sovereign immunity applies:

> (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the [a public entity's] property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function (State ex rel. Board of Trustees of the City of North Kansas City Memorial Hospital, 843 S.W.2d 353, 358 (Mo. banc 1993)); and (4) to the extent the [public entity] has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610).

*Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. Ct. App. 2009). Despite this limited waiver of sovereign immunity, "[f]or suits against public entities, sovereign immunity is the rule, not the exception." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921–22 (Mo. 2016). In interpreting this statute, the Missouri Supreme Court has emphasized that "statutory provisions that waive sovereign immunity must be strictly construed." *Id.* at 921.

"When bringing claims against a public entity, a plaintiff bears the burden of pleading with specificity facts giving rise to an exception to the rule of sovereign immunity." *Thompson v. City of St. Peters*, 220 F. Supp. 3d 975, 981 (E.D. Mo. 2016) (internal quotation mark omitted). "Sovereign immunity is not an affirmative defense but is part of the plaintiff's prima facie case." *St. John's*

14

*Clinic, Inc. v. Pulaski Cnty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. 2014). Therefore, "it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 491 (Mo. App. E.D. 2009).

Plaintiff first argues that the allegations in the complaint "implicate[] unsafe property conditions," so the waiver of sovereign immunity at Mo. Rev. Stat § 537.600.1(2) should apply. ECF No. 8, Pl.'s Resp. in Opp'n at 3. To state a claim under the "dangerous condition" exception, the Plaintiff must establish: "(1) a dangerous condition of the property; (2) that the injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind which was incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition." *Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 654 (Mo. Ct. App. 1997). For property to satisfy the "dangerous condition" test, it must be shown that "the condition was dangerous because of its existence," such that the property, "without intervention by third parties, posed a physical threat to plaintiff." *Id.* at 655 (citing *Alexander v. State*, 756 S.W.2d 539, 542 (Mo. 1988)).

Here, the allegations in Plaintiff's complaint fail to allege a dangerous condition of public property as that term has been interpreted by Missouri courts. Plaintiff does not allege that the physical condition of the inmate restroom or the closed door posed a physical threat to Plaintiff on its own. The complaint is

15

devoid of any allegation that Plaintiff suffered a physical injury from either object. Instead, Plaintiff contends that the conduct of an intervening third party is what resulted in his injuries. In the case of the inmate restroom, Plaintiff suffered emotional distress only because the other employees of Defendant forced him to use that restroom and barred him from the employee facilities. With respect to the closed door, Plaintiff suffered an injury only because another employee forbade him from opening the door. Because Plaintiff's allegations of harm are predicated on the conduct of an intervening third party, the complaint fails to allege a dangerous condition of public property that could implicate the waiver of sovereign immunity at Mo. Rev. Stat § 537.600.1(2). *See Dale By & Through Dale v. Edmonds*, 819 S.W.2d 388 (Mo. Ct. App. 1991) (finding no dangerous condition where plaintiff's injury caused by "the intentional conduct of another person and not the direct result of the physical condition" of the property).

Plaintiff's second argument invokes the waiver of sovereign immunity for liability insurance at Mo. Rev. Stat § 537.610.1. Plaintiff does not allege the existence of any insurance policy, but instead submits that he should be allowed to proceed to discovery because evidence of an insurance policy could potentially be discovered. This argument ignores Plaintiff's burden to "plead[] with specificity facts giving rise to an exception to the rule of sovereign immunity." *Thompson*, 220 F. Supp. 3d at 981. This requirement applies equally to the liability insurance exception, and so Plaintiff remains "obligated to plead facts sufficient to allege a waiver of sovereign immunity." *Brennan By & Through Brennan v. Curators of*

16

*the Univ. of Missouri*, 942 S.W.2d 432, 437 (Mo. Ct. App. 1997).  Even if Defendant has purchased applicable liability insurance—and there is no indication that it has—Plaintiff's failure to specifically allege facts sufficient to plausibly demonstrate a waiver of sovereign immunity due to the purchase of such insurance means that the complaint cannot overcome the motion to dismiss. *See State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 104 (Mo. Ct. App. 1996). Therefore, the Court will grant Defendant's motion to dismiss Count II and will dismiss that claim in its entirety without prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**, as set forth above.  The motion is **GRANTED** with respect to the portions of Count I seeking relief for violation of rights created by the self-care provision, 29 U.S.C. § 2612(a)(1)(D), and with respect to Count II in its entirety, which are **DISMISSED without prejudice**.   The motion is otherwise **DENIED**.  ECF No. 5.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2022.