UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL FILIUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-CV-01483-AGF |
| | ) | |
| MISSOURI DEPARTMENT OF CORRECTIONS, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on the motions of Defendant Missouri Department of Corrections ("DOC") and three employees, Cynthia Hygrade, Don Arias, and Anne Precythe (the "Individual Defendants" and, collectively with the DOC, the "Defendants")) to dismiss Plaintiff Michael Filius's second Amended Complaint for failure to state a claim. ECF No. 21.

Plaintiff originally filed suit against the DOC only, asserting claims of retaliation in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and intentional infliction of emotional distress ("IIED"). The DOC moved to dismiss that complaint, and on March 25, 2022, the Court granted the motion in part. The Court dismissed Plaintiff's IIED claim and dismissed in part Plaintiff's FMLA retaliation claim, only to the extent that claim related to the FMLA's "self-care" provision, 29 U.S.C. § 2612(a)(1)(D). ECF No. 12. However, the Court allowed Plaintiff's FMLA

1

retaliation claim related to the "family care" provision, 29 U.S.C. § 2612(a)(1)(C), to go forward.

In his second amended complaint, Plaintiff again asserts a claim of FMLA retaliation against the DOC (Count I). However, Plaintiff has added the three Individual Defendants, asserting claims against them under 42 U.S.C. § 1983 for First Amendment retaliation (Count II) and disability discrimination in violation of the Equal Protection Clause (Count III).

The individual Defendants now move to dismiss Plaintiff's § 1983 claims (Counts II and III) for failure to state a claim, and all Defendants further move to strike all allegations that appear to relate to the previously dismissed claim of FMLA retaliation under the self-care provisions. For the following reasons, the motion to dismiss Counts II and III will be granted, and the motion to strike will be denied.

## BACKGROUND

Taken as true for the purposes of this motion, Plaintiff alleges the following facts. Plaintiff was hired by the DOC in January 2018 to work as a Corrections & Probation Officer. ECF No. 18, Am. Compl. ¶ 12. Plaintiff suffers from an autoimmune disorder which causes him to fatigue quickly. *Id.* ¶ 14. Plaintiff notified Defendants of this condition at the onset of his employment because he required accommodations. *Id.* ¶¶ 14–15. Plaintiff's requests for accommodations included that his shifts not exceed twelve hours per day, and that he not work more than four hours of overtime. *Id.* ¶¶ 16–17. While Plaintiff's request was granted, he was often required to work shifts in excess of his requested accommodation. *Id.* ¶ 19.

2

Plaintiff used FMLA leave intermittently in 2018 for his health condition. *Id.* ¶ 23. Plaintiff also used FMLA to care for his daughter who "has a serious health condition." *Id.* ¶ 21.  Around November 28, 2018 Plaintiff's supervisor, Defendant Cynthia Hygrade, told Plaintiff that, "I don't want people taking FMLA, I don't want people with accommodations, and if you can't work over sixteen hours, I don't want you here." *Id.* ¶ 22.

Hygrade made several other comments about Plaintiff's use of FMLA and his accommodations, including asking Plaintiff why he was not working overtime and stating that she (Hygrade) would have never hired Plaintiff if she knew about the need for accommodations in advance. *Id.* ¶¶ 24–25.

Plaintiff made a formal complaint of discrimination on December 3, 2018, to Defendant Don Arias, Plaintiff's Facility Supervisor, based on the harassment he faced from his DOC supervisors. *Id.* ¶ 35.  After making this complaint, Plaintiff was treated poorly with regard to his working conditions and was isolated from his co-workers. *Id.* ¶ 37.  Plaintiff was prohibited from using the bathroom unless he went off site or used the inmate restroom, which was in an "unsanitary state" and "otherwise isolated from his co-workers, causing immense emotional distress." *Id.* ¶ 37.  Plaintiff complained about these "hazardous" and "unsanitary working conditions" and was prevented from photographing the "feces-stained restroom walls."[1]  *Id.* ¶¶ 39–40.

---

[1]  While Plaintiff alleges that he was prevented from photographing the state of the restroom he was forced to use, Plaintiff does not provide any information as to who prevented him from taking these photographs or how he was so prevented.

Plaintiff also asserts that he raised concerns about inmates having contraband in the facility. *Id.* ¶ 48. Plaintiff raised these concerns by giving a copy of his complaint to Defendant Anne Precythe, the State Director of the Department of Corrections, when she gave a speech at the St. Louis Facility on December 12, 2018. *Id.* ¶ 41–42.

Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2018. *Id.* ¶ 45. After Plaintiff filed his charge, an unidentified DOC employee made comments to Plaintiff "to the effect that if he filed a charge, he could not keep working for Defendant and that he wished Plaintiff could have been a 'team player.'" *Id.* ¶ 46, Plaintiff was also falsely accused of misconduct involving the use of force and was written up.[2] Plaintiff was then offered a transfer to a new location; Plaintiff declined the transfer because he felt it was punitive. *Id.* ¶ 50.

In January 2019, Plaintiff called the Missouri DOC counseling hotline. *Id.* ¶ 52. When Defendant Arias discovered that Plaintiff made this call, Arias suggested that Plaintiff "change his FMLA from medical to mental," asked Plaintiff if he had been checked to determine if he was bipolar, and noted that Plaintiff had made "a lot of complaints." *Id.* ¶ 53.

In late spring of 2019, Plaintiff requested additional FMLA time off for stress, anxiety, and depression and turned in his paperwork to Defendant Arias. However, Arias later claimed that neither he nor Defendant Hygrade received the paperwork. *Id.* ¶¶ 55–

---

[2] Plaintiff does not identify who made this accusation or who wrote Plaintiff up.

58. Plaintiff also alleges that around this time he suffered from allergy-related asthma, he "opened a door to aid his breathing," and he was told by an unidentified person, "[i]f you open that door, just leave." *Id.* ¶ 63. Plaintiff was terminated on June 17, 2019, for the stated reason that he violated the employer's policies and procedures. *Id.* ¶ 64.

Plaintiff filed suit against the DOC on December 17, 2021, and the DOC filed a motion to dismiss on December 27, 2021. ECF No. 3, 5. This Court granted the motion in part, with respect to Plaintiff's FMLA retaliation claim under the self-care provision and Plaintiff's IIED claim, on the basis of sovereign immunity. The Court denied the motion to dismiss with respect to Plaintiff's FMLA retaliation claim under the family-care provision. ECF No. 12.

Plaintiff filed a Second Amended Complaint on June 3, 2022. EFC No. 18. As noted above, Plaintiff again asserts a claim for FMLA retaliation against the DOC (Count I). Additionally, Plaintiff asserts § 1983 claims against the Individual Defendants in their individual capacities, alleging First Amendment retaliation (Count II) and disability discrimination in violation of the Equal Protection Clause (Count III).

Plaintiff's First Amendment retaliation claim (Count II) arises out of the allegedly adverse actions taken against Plaintiff when Plaintiff reported his complaints to Precythe, and when Plaintiff raised issues concerning inmate contraband, his unsanitary or hazardous working conditions, and being prevented from photographing the state of the restroom. ECF No. 18, ¶¶ 40, 75–87.

Plaintiffs' equal protection claim (Count III) alleges that Plaintiff was a "qualified individual with a disability and as such is Constitutionally protected against

5

discrimination on that basis"; that Plaintiff was qualified to perform his job with or without reasonable accommodation, and that Plaintiff's termination was motivated by his disability.

The Individual Defendants seek to dismiss Counts II and III on the grounds that Plaintiff has failed to plausibly allege a constitutional violation and that these Defendants are entitled to qualified immunity. With respect to Count II, the Individual Defendants argue that Plaintiff's statements concerning his working conditions did not constitute protected speech because the statements did not touch on a matter of public concern. With respect to Count III, the Individual Defendants contend that Plaintiff's equal protection claim is subsumed by the federal Americans with Disability Act ("ADA") and Rehabilitation Act of 1973 and, in any event, Plaintiff fails to plausibly allege a violation of the Equal Protection Clause. Alternatively, Defendant Precythe moves to dismiss all claims against her because Plaintiff has failed to plausibly allege her individual involvement in the alleged constitutional violations.

Additionally, all Defendants seek to strike Plaintiff's factual allegations that Defendants assert relate solely to Plaintiff's previously-dismissed FMLA retaliation claim under the self-care provision. Defendants also seek to strike Paragraph 33 of Plaintiff's complaint, which alleges that Plaintiff's co-worker was terminated after he refused to file a false report accusing Plaintiff of theft and refused to write people up for taking FMLA leave. EFC No. 18, ¶ 33. Defendants contend this allegation is immaterial to Plaintiff's claims.

6

Plaintiff opposes the motion to dismiss. With respect to Count II, Plaintiff contends that his speech related to a matter of public concern because Plaintiff was engaging in activity as an advocate for the public and inmates regarding safety and health. Regarding Count III, Plaintiff argues that he has pled a stand-alone constitutional claim that does not depend on and is not subsumed by the ADA, noting that the ADA does not permit suits against individuals. Next, Plaintiff argues that the Individual Defendants have not established that they are entitled to qualified immunity at this stage and that Plaintiff has adequately pled the individual involvement of Defendant Precythe in the alleged constitutional violations. Finally, Plaintiff argues that Defendants' motion to strike is inappropriate. However, Plaintiff acknowledges that "[t]he Court's prior order obviously stands, and Plaintiff is not asserting any claim for self-care retaliation under the FMLA." ECF No. 26 at 9. Plaintiff states that he is instead offering such allegations as "mere background, relevant to the overall case and Plaintiff's employment in general." *Id.*

## DISCUSSION

**Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6) a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 566 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Hum. Servs.,* 850 F.3d 368,

7

371 (8th Cir. 2017) (quoting *Iqbal,* 556 U.S. at 677).  "The plausibility standard asks for more than a mere possibility that a defendant has acted unlawfully or more than a sheer possibility of misconduct." *Id.* (citation omitted).  On a motion to dismiss the court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  The complaint will be dismissed only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations.  *Casino Res. Corp. v. Harrah's Ent. Inc.,* 243 F.3d 435, 437 (8th Cir. 2001).

"Qualified immunity shields government officials from liability for civil damages for discretionary acts that do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carter v. Huterson*, 831 F.3d 1104, 1108 (8th Cir. 2016) (quoting *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 772 (8th Cir. 2004)).  The defense of qualified immunity involves an inquiry into: (1) whether the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  At the motion to dismiss stage, a defendant must show that immunity is established "on the face of the complaint." *Dollar Loan Ctr. of S. D., LLC v. Afdahl*, 933 F.3d 1019, 1024 (8th Cir. 2019) (citation omitted).  "This requires us to analyze whether [the plaintiff] has stated a plausible claim for a violation of a constitutional or statutory right of which a reasonable person would have known and whether the right was clearly established at the time of the alleged infraction." *Id.* (cleaned up and citations omitted).

8

1.     **First Amendment Retaliation under § 1983 (Count II)**

To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse action against him; and (3) the protected activity was a substantial or motivating factor in defendants' decision to take the adverse action." *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017) (citation omitted).

The threshold question is whether Plaintiff's speech made in the context of his employment as a corrections officer was protected under the First Amendment. The inquiry into the protected status of speech is one of law, not fact. *Connick v. Myers,* 461 U.S. 138, 148 n.7, 10 (1983).

> The determination of what speech is protected in the public employment context involves a two-step analysis: first, the speech must address a matter of public concern, [] and then the interest of the employee in speaking must be weighed against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Crain v. Bd. of Police Comm'rs of Metro. Police Dep't of City of St. Louis*, 920 F.2d 1402, 1411 (8th Cir. 1990) (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968)).

Whether Plaintiff was speaking as a citizen on a matter of public concern depends on the "content, form, and context of the speech, as revealed by the whole record." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.,* 793 F.3d 822, 833 (8th Cir. 2015) (quoting *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002)). The form and content of the speech helps to determine if the employee speaks as a "concerned citizen informing the public" or "merely as an employee speaking about internal practices relevant only to fellow employees." *Henry v. Johnson,* 950 F.3d 1005, 1012 (8th Cir. 2020) (quoting

9

*Calvit v. Minneapolis Pub. Sch.,* 122 F.3d 1112, 1117 (8th Cir. 1997)). If the main motivation for Plaintiff's speech was furthering his own private interests rather than to raise issues of public concern, his speech is not protected, even if the public would have an interest in the topic of the speech. *Althonen v. City of Minneapolis,* 497 F.3d 554, 559 (8th Cir. 2007).

      Here, Plaintiff has failed to allege sufficient facts to demonstrate that the motivation for his speech was a matter of public concern rather than his own personal grievance. Plaintiff contends that the restroom he used was "hazardous" and in an "unsanitary state." But it is clear from the complaint that the state of the restroom was only concerning to Plaintiff because he was forced to use that restroom and was isolated from his co-workers. He alleges no facts from which it could be plausibly inferred that his complaints about the bathroom were motivated by his concern for the public or the inmates with whom he shared the restroom. Likewise, Plaintiff's conclusory allegations that he complained about "hazardous, cruel and unsanitary" or unspecified inmate "contraband" do not convert his personal grievances into matters of public concerns. Nowhere in his complaint does Plaintiff plead that he was acting on behalf of other employees, or that he planned to notify other citizens, co-workers, or the public at large of the allegedly poor or unsafe working conditions. *See Connick*, 461 U.S. at 148 (reasoning that a public employee's expressions of dissatisfaction with supervisors' actions did not touch on a matter of public concern where the employee did not "seek to bring to light actual or potential wrongdoing or breach of public trust" on behalf of themselves or others).

10

Because Plaintiff's complaints were merely personal grievances attacking internal policies and employment actions, his speech is not protected activity under the First Amendment and the Court need not reach the second step in the analysis, the *Pickering* balancing test. But even if Plaintiff's speech implicated some limited public concern, it would be easily outweighed by the DOC's interest in maintaining its leave policies, discipline, morale, and good working relationships within the department. *See, e.g.*, *Crain*, 920 F.2d at 1412 (describing the strength of such state employer interests, particularly in the context of law enforcement departments). Moreover, the Eighth Circuit has held that "when the *Pickering* balancing test is at issue, the asserted First Amendment right will rarely be considered clearly established," such that the individual Defendants would be entitled to qualified immunity. *See Hall v. Mo. Highway & Transp. Comm'n*, 235 F.3d 1065, 1068 (8th Cir. 2000). For all of these reasons, the Court will grant the motion to dismiss Count II.

**2. Disability Discrimination under § 1983 (Count III)**

Section 1983 provides a federal cause of action for plaintiffs to sue officials acting under color of state law for alleged deprivations of "rights, privileges, or immunities secured by the Constitution[.]" *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) (quoting 42 U.S.C.§ 1983). A plaintiff may use § 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes. *Ark. Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 523 (8th Cir. 1993) (citation omitted). However, when Congress has shown an intent to limit available avenues for relief in a statute, courts presume that Congress intended the enforcement mechanism

11

provided in the statute to be exclusive. *Grey v. Wilburn*, 270 F.3d 607, 611 (8th Cir. 2001).

Like several other circuits to consider the issue, the Eighth Circuit has held that "the comprehensive enforcement mechanisms provided under § 504 [of the Rehabilitation Act] and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983." *Alsbrook*, 184 F.3d at 1011 (also citing *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1531 (11th Cir.1997) for the proposition that "a plaintiff may not maintain a section 1983 action in lieu of . . . . an ADA cause of action if the only alleged deprivation is of employee's rights created by the ADA"). These circuits have reasoned that "[a]llowing pure Title VII and ADA claims under § 1983 would thwart Congress' carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified." *Williams v. Penn. Hum. Rels. Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017).[3]

Plaintiff is correct that he may nevertheless bring suit under § 1983 if his employer's conduct, besides violating the ADA, "also amounts to a violation of a right secured by the Constitution." *See Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012).

---

[3] Indeed, allowing Plaintiff to sue under § 1983 would allow Plaintiff to get around the ADA's limitations. As Plaintiff concedes, ECF No. 26 at 6, the ADA imposes liability only on employers, not individuals. *See Williams*, 870 F.3d at 299 ("[W]hile Title VII and the ADA impose liability only on employers, permitting a plaintiff to sue under § 1983 based on violations of these same statutes would open individuals . . . to employment discrimination suits," contrary to Congress's intent). Moreover, the Supreme Court has held that suits by state employees to recover damages for disability discrimination under Title I of the ADA are barred by the Eleventh Amendment. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).

But Plaintiff has not pled a violation of the Equal Protection Clause or any other constitutional provision here.

The essence of equal protection analysis is that similarly situated people must receive similar treatment under the law. *Post v. Harper,* 980 F.2d 491, 495 (8th Cir. 1992). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018) (citation omitted). "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*

Further, because disability is not a suspect classification, an equal protection claim for disability discrimination is subject to only rational-basis review. *See Garrett,* 531 U.S. at 366–67). In other words, "[s]tates are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly— and perhaps hardheartedly— hold to job-qualification requirements which do not make allowance for the disabled." *Id.* at 367–68.

Plaintiff does not allege that he was treated differently than anyone similarly situated, let alone that such differential treatment was due to his disability or was lacking in any rational basis. Rather, Plaintiff's allegations with respect to Count III invoke verbatim the language of the ADA and Plaintiff's rights under the ADA, including that he was a "qualified individual with a disability," that he was "qualified to perform his job, with or without reasonable accommodation," and that he was discriminated against due to

13

his disability. ECF, No. 18, ¶¶ 89-92; *see, e.g.*, *Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000) (listing elements of an ADA claim in essentially identical terms). Such a claim is not "'separate and independent'" from an ADA claim but is rather "subsumed by the ADA." *See Grey*, 270 F.3d at 610. Certainly, the question is not so free from doubt as to render it clearly established that the Defendants' conduct violated Plaintiff's right to equal protection. As such, the individual Defendants are entitled to qualified immunity. For all of these reasons, the Court will grant the motion to dismiss Count III.

**Motion to Strike**

Courts may strike from a pleading any "immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although district courts enjoy "broad discretion" in determining whether to strike a party's pleadings, such an action is "an extreme measure." *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000). Accordingly, motions to strike are "viewed with disfavor and are infrequently granted." *Id.* (citation omitted).

Defendants have not offered sufficient justification under this standard to warrant striking any allegations. As Plaintiff concedes, the Court's prior ruling as to sovereign immunity with respect to FMLA retaliation under the self-care provision stands. Therefore, to the extent Count I attempts to restate an FMLA claim under the self-care provision, such claim is again dismissed. Count I will only be allowed to proceed only with respect to the FMLA's family care provision. With this clarification, the Court does

not believe striking allegations is warranted.  Nor is Paragraph 33 so immaterial as to warrant striking.  The Court will therefore deny Defendants' motion to strike.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss and motion to strike Plaintiff's Second Amended Complaint is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 21.  Counts II and III and Defendants Anne L. Precythe, Cynthia Hygrade, and Don Arias are **DISMISSED**; and Count I is again **DISMISSED in part**, solely to the extent it attempts to seek relief for violation of rights created by the self-care provision of the Family Medical Leave Act, 29 U.S.C. § 2612(a)(1)(D).  The only claim that remains is Plaintiff's claim in Count I against the Missouri Department of Corrections seeking relief for violation of rights created by the family-care provision of the Family Medical Leave Act, 29 U.S.C. § 2612(a)(1)(C).

**IT IS FURTHER ORDERED** that Defendants' motion to strike is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of  November, 2022.