UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FILIUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01483-AGF |
| | ) |
| MISSOURI DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (ECF No. 46) of Defendant Missouri Department of Corrections ("DOC") for summary judgment with respect to the only remaining claim in this case: Plaintiff Michael Filius' claim of retaliation in violation of the Family Medical Leave Act of 1993 ("FMLA"), 107 Stat. 6, 29 U.S.C. § 2601 et seq., related to the "family care" provision of that Act, 29 U.S.C. § 2612(a)(1)(C).  For the reasons set forth below, the motion will be granted.

## BACKGROUND

For the purpose of the motion before the Court, the record establishes the following.  Plaintiff began working for the DOC as a probation and patrol assistant in the Transition Center in St. Louis ("TCSTL") in April of 2018.  Plaintiff's co-worker Richard Lambe testified by deposition in this case as to Plaintiff's strong performance in this role and that Plaintiff was sometimes referred to "super cop."

In July of 2018, Plaintiff sent an email to his supervisors stating that he may need time off in the near future to care for his then 18-year-old daughter who was returning from the hospital. Plaintiff's daughter had been diagnosed with myopathy and Eosinophilic Esophagitis, an autoimmune disorder which causes severe inflammation of the esophagus. Her condition had worsened by 2018 and required out-of-state surgeries every six months. Plaintiff drove his daughter to these surgeries, stayed with her during her multi-day hospital stays, and otherwise provided regular care for her.

Upon returning from one such appointment for his daughter in October of 2018, Plaintiff worked his normal shift and was then resting in his car when he was told by a DOC captain, Patrick Kosanke, "If you can't stay here and work, you need to get off the property." ECF No. 49, Pl.'s Statement of Additional Material Facts at ¶ 65. Kosanke also made comments in the fall of 2018 regarding Plaintiff's requests for time off, stating "It's nice to get off when you want," that Kosanke's daughter also had special needs but Kosanke "still [had] to stay over," and that "everyone [was] abusing FMLA." Pl.'s Statement of Additional Material Facts at ¶¶ 66-68. According to Plaintiff, Kosanke and other co-workers also expressed doubt as to the seriousness of Plaintiff's daughter's medical condition and regularly indicated that Plaintiff was causing low morale in the workplace because others believed that Plaintiff's ability to take leave was unfair.

On November 28, 2018, Plaintiff gave his supervisors a doctor's note indicating his own medical conditions as follows: IgM deficiency, Vitamin D deficiency, and asthma/allergies. Either the same day or the following day, Cynthia Hygrade, Plaintiff's supervisor and the assistant superintendent of TCSTL, called Plaintiff into a meeting and

2

told him: "If I would have known that you needed FMLA or an ADA accommodation, you would never have been hired. I would have sent your file to Julie Kemper[1] to disappear. I do not want people with FMLA here. If you cannot work 16 hours, I don't want you here."[2]  Pl.'s Statement of Additional Material Facts at ¶ 72.  At that point, Hygrade also let Plaintiff know that she was ready to send Plaintiff's file to Kempker for dismissal, though it is not clear from the record whether she did so.

Plaintiff's co-worker Lambe was also present at this meeting with Hygrade.  In his deposition in this case, Lambe testified that Hygrade asked him (Lambe) to be a "team player," and Lambe believed that Hygrade wanted him to falsify documentation against Plaintiff, which Lambe refused to do.  Pl.'s Statement of Additional Material Facts at ¶ 86; ECF No. 49-2, Lambe dep. 21: 3-24.  Lambe sent a memorandum to the DOC dated November 29, 2018 and addressed to "whom ever," in which Lambe complained about being pressured to write up employees that make FMLA requests.  Lambe was terminated from his position in December of 2019.[3]  ECF No. 49-14, Pl.'s Ex. 14.

---

[1]     Kempker was the DOC's director of probation and parole at all relevant times.

[2]     Hygrade denied making such statements and subsequently testified that she herself used FMLA leave on three occasions and was also granted a disability accommodation by the DOC.

[3]     The record neither reflects the reason(s) for Lambe's termination nor indicates that the termination was related to his above-noted memorandum to the DOC.

3

Plaintiff promptly reported Hygrade's statements to TCSTL's then-superintendent, Don Arias.[4]  Arias was aware of employees at TCSTL who were utilizing FMLA leave, and requests for FMLA leave were also reviewed by the DOC's FMLA unit.

On November 29, 2018, Arias submitted a request for investigation by the DOC into Plaintiff's complaint that Hygrade made inappropriate comments regarding employees' use of FMLA leave and that Hygrade was retaliating against Plaintiff for making such requests.  The investigation was conducted by Yvonne Moore, a DOC civil rights investigator, who interviewed 11 individuals, including Plaintiff and Hygrade, and reviewed relevant documentation.

On or about December 5, 2018, Hygrade complained to her supervisor, Arias, that Plaintiff was making "unfounded" statements about her and creating a "chaotic situation" with respect to his accusations.  Pl.'s Statement of Additional Material Facts at ¶ 78.

On the same date, December 5, 2018, Plaintiff submitted to the DOC a request for reasonable accommodations in which he requested that his overtime be limited due to his own medical conditions.  Plaintiff also sent a memorandum to his supervisors on December 17, 2018, in which he stated that he was unable to work overtime that day due to his "daughter[']s medical reasons and the added stress [he had] lately been receiving from work." ECF No. 47-24, Def.'s Ex. X, at 2.

Prior to Hygrade's meeting with Plaintiff on November 28 or 29, 2018 referenced above, Hygrade had not received any written complaints about Plaintiff's job

---

[4]   Arias served as TCSTL superintendent until early March 2019.

4

performance. However, on or about December 6, 2018, Hygrade received a written report from a TCSTL staff member indicating that Plaintiff antagonized an inmate while she (the staff member) and other staff were attempting to conduct a mental health exam of that inmate. According to Plaintiff, Hygrade requested that the staff member prepare this written report. Hygrade testified that she usually requested that staff prepare written reports after they came to her with verbal complaints.

On December 11, 2018, Hygrade received another written complaint from a different staff member that Plaintiff was inappropriately messaging her on social media and outside of work hours.

On or about December 12, 2018, the director of the DOC, Anne Precythe, spoke at the TCSTL about low morale, at which time Plaintiff stood up and handed Precythe a copy of his complaint against Hygrade. Precythe refused to accept the document. Plaintiff also met Kempker, the DOC's director of probation and parole, at this event.

The same day, December 12, 2018, Arias sent a memorandum to Kempker indicating that Plaintiff had failed to meet the expectations and competencies of his position, knowing this could result in discipline against Plaintiff. Arias based his memorandum in part on the written complaints against Plaintiff that Hygrade received from staff members earlier that month, as noted above.

On December 17, 2018, Arias submitted a request for investigation ("RFI") into several incidents of alleged unprofessional behavior or misconduct by Plaintiff, including the written complaints against Plaintiff received by Hygrade as noted above and also other incidents of alleged policy violations by Plaintiff. The investigation was conducted

5

by DOC investigator, Richard Adair. Adair interviewed six witnesses, including Plaintiff, and reviewed relevant reports.

Around this time, Plaintiff was transferred to the "control center," which he alleges lacked proper ventilation and air condition, and in which the only restroom he was able to access was the inmates' restroom, which he alleges was unsanitary.[5]

On December 18, 2018, the DOC granted Plaintiff's request for accommodation and exempted Plaintiff from working more than 12 hours per shift.

In January of 2019, Plaintiff indicated to his employer that he would continue to need leave for the purpose of caring for his daughter, who was still undergoing treatment in Ohio. Although Plaintiff intended to secure FMLA leave for his daughter, he alleges that Arias pressured him to change his FMLA leave to ask for leave to care for himself; Plaintiff alleges that Arias also asked him (Plaintiff) whether he had been checked to see if he was bipolar.

On February 15, 2019, Arias requested FMLA paperwork on Plaintiff's behalf. Plaintiff alleges that he completed and left FMLA paperwork under the door of Arias's and Hygrade's office and also in their mailbox. Arias and Hygrade deny ever receiving such paperwork. Plaintiff did not become officially eligible for FMLA leave until April of 2019, when he had been employed for 12 months. Plaintiff's leave sheets do not reflect that he ever took FMLA leave.

---

[5] The parties provide no further detail about Plaintiff's transfer, or whether the transfer altered any of Plaintiff's job duties or benefits.

Adair completed his investigation into the complaints against Plaintiff on May 11, 2019. Based on this investigation, Adair concluded that there was sufficient evidence that Plaintiff: (1) antagonized an inmate while other staff were attempting to conduct a mental health exam; (2) provided conflicting information in two reports about his use of force against an inmate[6]; (3) intentionally retained confidential DOC records, including resident identification cards and other confidential information, which Plaintiff retained in his vehicle for his personal purposes unrelated to the duties of his position; and (4) was dishonest in his DOC job application regarding his employment history because he indicated that he left his previous position at the North East Correctional Center for personal reasons when he was in fact terminated.

Based on these findings, Adair concluded that Plaintiff had violated DOC policies regarding the handling of confidential records, truthfulness in reports to the DOC, and treating inmates or staff with respect.[7] On May 29, 2019, Chris Sarchett, who had by that time replaced Arias as the superintendent of TCSTL, held a pre-disciplinary meeting with Plaintiff. In this meeting, Plaintiff was given the opportunity to respond to the above-

---

[6] Specifically, Plaintiff's first report regarding the use of force did not indicate that the inmate had attempted to attack an officer, but Plaintiff added that fact to a later report. In his deposition in this case, Arias testified that he believed the use of force itself was appropriate. However, the alleged policy violation related to the inconsistencies in Plaintiff's reporting of the incident.

[7] Although Plaintiff denies that there was in fact sufficient evidence of any policy violation, he has not offered any evidence or cited to any portion of the record to support his denial or to demonstrate that there is a genuine controversy as to the fact of his policy violation. Therefore, the Court will deem the fact as true to the extent supported by the record. *See* Fed. R. Civ. P. 56(c), (e); E.D.Mo. L.R. 4.01(E).

7

noted allegations made against him. On June 1, 2019, Sarchett found that discipline against Plaintiff was warranted based on the investigation conducted by Adair.

Kempker, the DOC's director of probation and parole, ultimately made the decision to terminate Plaintiff based on the findings of Adair's investigation. Kempker testified that her "two main concerns" were that Plaintiff removed confidential documents from the facility and that he lied on his application, but that she based her decision on all of Adair's findings. ECF No. 47-4, Kempker dep. 28:16-30:18. Arias testified in his deposition in this case that it was unusual for an employee to be terminated and that there would have to be negligent, extreme, unprofessional behavior before termination was warranted under most circumstances.

Kemper has on occasion interviewed employees regarding allegations against them prior to termination, but she did not do so in Plaintiff's case. Kempker does not process FMLA requests and was not aware of Plaintiff's FMLA status or FMLA requests at the time of Plaintiff's termination. At some point, Kempker learned of Plaintiff's complaints against Hygrade, including Hygrade's alleged statements complaining about employees using FMLA, but there is no evidence in the record indicating when Kempker learned this information.

Plaintiff was notified of his termination on June 13, 2019, and his termination became effective on June 17, 2019. Plaintiff alleges that a few weeks before his termination, he alerted his employer that his daughter would need surgery in June of 2019. Plaintiff does not indicate, and the record does not reflect, which individuals at the DOC Plaintiff so alerted.

8

Plaintiff and his co-worker, Lambe, testified in their depositions in this case that they had heard of other officers who engaged in sexual conduct with an inmate, were accused of sexual misconduct in the workplace, and/or were accused of assault on staff members and inmates, but who were not terminated.

DOC investigator Moore completed her investigation of Plaintiff's retaliation complaint against Hygrade and submitted her report to the DOC on August 8, 2019. Moore found that there was insufficient evidence to show that Hygrade or other administrative officials violated DOC policy with respect to their treatment of Plaintiff.

Plaintiff filed suit on December 17, 2021.  As noted above, the only claim remaining is his claim of retaliation in violation of the FMLA as it relates to the "family care" provision of that Act, 29 U.S.C. § 2612(a)(1)(C), based on his attempts to seek leave for the care of his daughter.  Specifically, Plaintiff claims that his termination was retaliation for his attempts to exercise his rights under the FMLA to care for his daughter.

Defendant moves for summary judgment on several grounds.  First, Defendant argues that Plaintiff was never entitled to protection under the FMLA for the care of his daughter because his daughter was over 18 years old by the time Plaintiff became eligible for FMLA leave and because Plaintiff cannot show that his daughter was incapable of self-care, as required under the FMLA.  Next, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because he can neither show that he attempted to properly exercised his rights under the FMLA to care for his daughter, given that he was ineligible to do so for most of his employment and that he did not provide adequate notice to his employer, nor that his termination was causally connected to any attempt to

9

exercise such rights. Finally, Defendant argues that even if Plaintiff could demonstrate a prima facie case of retaliation, he cannot demonstrate that the legitimate, non-discriminatory reasons for his termination were pretextual, as required to survive summary judgment.

Plaintiff opposes the motion, arguing that he engaged in activity protected by the FMLA when he prospectively sought FMLA rights to care for his seriously ill daughter and when he complained about his supervisor's discriminatory statements regarding FMLA use. Plaintiff further argues that he has demonstrated triable issues of fact regarding both causation and pretext in light of the biased remarks by Hygrade, the fact that the final decisionmaker Kempker relied in part on written complaints against Plaintiff received by Hygrade in deciding whether to terminate Plaintiff, the temporal proximity between Hygrade's discriminatory remarks and the written complaints by staff members accusing Plaintiff of misconduct, the temporal proximity between Plaintiff's termination and his mention of his daughter's surgery needs weeks earlier, the general atmosphere of retaliation at his workplace, and the different treatment of similarly situated officers.

<strong><u>LEGAL STANDARD</u></strong>

**<u>Summary Judgment Standard</u>**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving

10

party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan and Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

**FMLA Retaliation**

The FMLA "makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(2)). The statute also makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2) .

"Whether characterized as a 'discrimination' claim under § 2615(a)(1), or as a 'retaliation' claim under § 2615(a)(2), we require proof of the employer's discriminatory intent." *Corkrean v. Drake Univ.*, 55 F.4th 623, 630 (8th Cir. 2022) (internal quotations

11

omitted) (citations omitted).  Such "proof may come from direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Plaintiff argues that he has produced direct evidence of a discriminatory intent in the form of Hygrade's and others' statements complaining about employees generally, and Plaintiff in particular, using FMLA leave.  But even if those statements could rise to the level of demonstrating bias against Plaintiff's future intent to seek FMLA leave to care for his daughter, none of those statements came from a decisionmaker in this case.

"To be considered direct evidence of discrimination, a remark must be by a decisionmaker and show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." *Button v. Dakota, Minnesota & E. R.R. Corp.*, 963 F.3d 824, 832 (8th Cir. 2020) (quoting *Torgerson*, 643 F.3d at 1045–46).  There is no evidence that Hygrade or any of the others accused of making negative statements about Plaintiff's FMLA use (such as Kosanke or other co-workers) had authority to terminate Plaintiff. [8] *See Thompson v. Kanabec Cnty.*, 958 F.3d 698, 707 (8th Cir. 2020) ("[E]ven assuming

---

[8] Plaintiff bases his claim of retaliation on his termination, not his transfer to the control center, and the parties have not addressed the transfer as a basis for Plaintiff's claim in their briefs.  Therefore, the Court need not do so either.  In any event, Plaintiff has not demonstrated that his transfer to the control center constituted an adverse employment action, as required to state an FMLA retaliation claim.  *See Corkrean*, 55 F.4th at 630–31 (explaining elements of FMLA claim); *Naes v. City of St. Louis, Missouri*, No. 22-2021, 2023 WL 3991638, at *1 (8th Cir. June 14, 2023) (explaining that under current Eighth Circuit precedent, "an adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.").

the email from Christopherson demonstrated a bias regarding Thompson's FMLA request, Christopherson did not have the authority to terminate Thompson. Only a majority vote of the Board could terminate Thompson's employment. As such, Thompson has failed to demonstrate a bias from a decision maker.").

The decisionmaker in this case was Kempker, and there is simply no evidence that Kempker—or, for that matter, Sarchett, who recommended Plaintiff for discipline, or Adair, who investigated and found Plaintiff liable for misconduct—were motivated by bias.[9] Indeed, the final decisionmaker Kemper testified that her "main concerns" motivating her decision to terminate Plaintiff were Plaintiff's removal of confidential documents and his lying on his application. Plaintiff was given an opportunity to respond to these accusations and has conceded that he committed these two misdeeds. Importantly, there is no evidence that Hygrade or anyone else accused of making biased statements had anything to do with reporting these particular instances of misconduct or inducing others to do so. Further, there is no evidence that Kempker knew of any attempt by Plaintiff to exercise his FMLA rights at the time she made the decision to terminate Plaintiff. In short, Plaintiff has no direct evidence of a discriminatory intent.

In the absence of direct evidence, the *McDonnell Douglas* framework applies. This familiar framework requires the employee to first demonstrate a prima facie case showing that (1) he engaged in activity protected under the act; (2) he suffered a materially adverse employment action; and (3) a causal connection existed between the

---

[9] Nor is there evidence that Moore, who investigated Plaintiff's complaint against Hygrade, was motivated by bias.

13

employee's action and the adverse employment action. *Corkrean,* 55 F.4th at 630–31. "The elements of a prima facie case for both discrimination and retaliation are essentially the same." *Id*, 55 F.4th at 631.

Once the employee has established a prima facie case, the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). If the employer does so, the employee must demonstrate that the reason the employer offered was merely pretextual by presenting "evidence that (1) creates a question of fact regarding whether [the employer's] reason was pretextual and (2) creates a reasonable inference that [the employer] acted in retaliation." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802–03).

In light of the fully developed summary judgment record, the Court assumes without deciding that Plaintiff has presented a prima facie case and turns directly to the question of pretext. *E.g., Corkrean.*, 55 F.4th at 631 (explaining that such an approach is common at the summary judgment stage). Here, the DOC has established a well-documented set of legitimate reasons for Plaintiff's termination, namely, Plaintiff's violation of DOC policies and procedures by removing confidential documents from the facility, misrepresenting his prior termination, providing conflicting information about the use of force on an inmate, and engaging in unprofessional conduct with another inmate and staff. Thus, Plaintiff cannot survive summary judgment unless he demonstrates that these legitimate reasons for his termination were pretextual.

An employee can demonstrate pretext by either: (1) showing that the employer's proffered explanation is incredible because it has no basis in fact or (2) that a prohibited

14

reason was more likely the reason behind the employer's actions. *Id.* at 631 (citations omitted).

As noted above, Plaintiff has effectively conceded that the DOC's proffered explanations have a basis in fact and has failed to cite to any evidence contradicting the facts supporting the DOC's explanations.[10] Therefore, he must demonstrate that "sufficient evidence of intentional retaliation or discrimination exists for a jury to believe [his] allegations and find that the proffered explanation was not the true motivating explanation." *Corkrean*, 55 F.4th at 631–32 (citation omitted). Such pretext may be shown by demonstrating that the employee "[1] received a favorable review shortly before [being] terminated, [2] that similarly situated employees who did not engage in the protected activity were treated more leniently, [3] that the employer changed its explanation for why it fired the employee, or [4] that the employer deviated from its policies." *Id.* at 632 (citation omitted).

---

[10] Even if Plaintiff had proffered evidence that he did in fact not engage in the above-noted misconduct, he likely still could not establish a genuine issue of material fact that the DOC's explanation was false. As the Eighth Circuit has explained:

> If an employer, in explaining a termination, says it believed that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false. That proof shows only that the employer's belief was mistaken. To prove that the employer's explanation was false, *the employee must show the employer did not truly believe that the employee violated company rules.*

*Cross v. United Parcel Serv., Inc.*, No. 21-3819, 2023 WL 3858611, at *1–2 (8th Cir. June 7, 2023) (quoting *Pulczinski,* 691 F.3d at 1003) (emphasis in original). Plaintiff has not presented evidence that the decisionmakers here did not truly believe that Plaintiff violated DOC rules.

15

Of these four means, Plaintiff has only attempted the second: to show that similarly situated employees were treated more leniently. "A similarly situated coworker is someone who 'dealt with the same supervisor, [was] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Cross*, 2023 WL 3858611, at *2 (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc)). "At the pretext stage, the test for whether someone is similarly situated is rigorous." *Id.* (citations omitted).

Plaintiff relies on his own deposition testimony, and that of his co-worker Lambe, stating that both had heard of other officers who were accused of sexual misconduct or assault but who were not terminated. Besides constituting hearsay, Plaintiff's cited deposition testimony does not establish that the other officers were similarly situated. Plaintiff has not indicated what position these officers held, where or when they worked for the DOC, or which supervisors they dealt with. More importantly, none of these officers is alleged to have engaged in the same conduct as Plaintiff. None is alleged to have removed confidential documents from the facility, lied on an application, or submitted inconsistent use-of-force reports.

Plaintiff also attempts to prove pretext by pointing to evidence of a retaliatory atmosphere in general in the form of harassing remarks by Hygrade and others, and of the temporal proximity between his exercise of rights and termination. "An employee may attempt to shorten the gap between [his] protected activity and the adverse action by showing that shortly after [he] engaged in the protected activity, the employer took escalating adverse and retaliatory action against her." *Hite v. Vermeer Mfg. Co.*, 446

16

F.3d at 866 (citations omitted).  Such as a pattern or general atmosphere of discrimination may be relevant background for the Court's analysis.  *See id.*

However, the cases cited by Plaintiff on this point involved much stronger evidence of discrimination and pretext, including supervisors directly and primarily referencing a plaintiff's FMLA-qualifying sick leave as part of the performance issues justifying her termination, rather than relying on other legitimate reasons such as insubordination.  *See, e.g.*, *Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1278-79 (11th Cir. 2020)   Here, by contrast, the link between any harassing remarks by Hygrade or others and Plaintiff's termination, which followed an extensive investigation of unrelated misconduct by Plaintiff, is much greater.  Plaintiff's evidence of a general atmosphere of retaliation is simply insufficient to permit a reasonable inference of pretext, particularly in the face of Plaintiff's admitted misconduct.

Likewise, as to the timing of the relevant events, "temporal proximity between protected activity and adverse employment action . . . alone is generally insufficient" to demonstrate pretext. *Corkrean*, 55 F.4th at 632 (citation omitted).  Plaintiff points to the "flurry" of written complaints about Plaintiff's work that Hygrade received shortly after Plaintiff complained of Hygrade's allegedly biased statements.  But Plaintiff has not provided any evidence that these complaints were related to his complaint about Hygrade's statement.

In any event, even assuming that Plaintiff's complaint regarding Hygrade was a protected activity under the FMLA, the approximately six-month gap between this activity and Plaintiff's termination seriously undermines any finding that two events were

17

related. *See, e.g.*, *Lissick v. Andersen Corp.*, 996 F.3d 876, 886–87 (8th Cir. 2021) ("[C]ases in which we have determined that temporal proximity alone was sufficient to create an inference of [causation] 'have uniformly held that the temporal proximity must be 'very close.'").[11] Further, the DOC's primary reasons for terminating Plaintiff—his removal of confidential documents from the facility and lying on his application—had nothing to do with Hygrade, were uncovered during an in-depth investigation by an individual no one accuses of being biased (Adair), and were admitted by Plaintiff after Plaintiff was given an opportunity to respond. *See Corkrean*, 55 F.4th at 632 (finding a one-month gap too long to create inference of pretext, even when accompanied by an employer's failure to follow its own policies, in light of the employer's well documented legitimate reasons for termination).

"Crucially, an employee who exercises her rights under the FMLA 'has no greater protection against termination for reasons unrelated to the FMLA than she did before doing so." *Id,* at 633 (quoting *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 958 (8th Cir. 2012)). It is undisputed that Plaintiff violated DOC policy, and absent any showing

---

[11] Plaintiff's argument that he was terminated a few weeks after notifying his employer of his daughter's surgery is also insufficient to demonstrate pretext. Temporal proximity is judged by the date an employer first knew of an employee's use (or planned use) of FMLA. *Lissick*, 996 F.3d at 886–87. Plaintiff first announced his intention to take regular leave to care for his daughter in July of 2018, nearly a year before he was terminated. That lag is too long to permit a reasonable inference of pretext. Further, Plaintiff has not suggested or provided evidence to indicate that he notified anyone of his daughter's June 2019 surgery needs before Adair completed his investigation into Plaintiff's misconduct on May 11, 2019 (approximately one month before Plaintiff's termination). Nor has Plaintiff suggested that any decisionmaker—Adair, Sarchett, Kempker, or Moore—knew of his daughter's June 2019 surgery needs.

18

that his performance deficiencies were untrue, Plaintiff cannot demonstrate that the reasons the DOC proffered for his termination are pretext for discrimination. *See, e.g., Brandt v. City of Cedar Falls*, 37 F.4th 470, 475-80 (8th Cir. 2022) (holding that plaintiff failed to demonstrate pretext by alleging that her supervisor intentionally instructed staff to find errors in her work because there was no evidence that the document deficiencies were inaccurate"); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) (stating that a case built on temporal proximity "is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive").

Plaintiff's failure to demonstrate pretext requires the dismissal of his FMLA claim as a matter of law. Therefore, the Court will grant the DOC's motion for summary judgment without reaching Defendant's other arguments.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**. ECF No. 46.

All claims against all parties having been resolved, a separate Judgment will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2023.